28 So.2d 786

**RUSSELL v. THE PRAETORIANS, Inc., et al.**

· 6 Div. 464.

Supreme Court of Alabama.
Jan. 16, 1947.

Horace C. Alford and Chas. E. Wilder, both of Birmingham, for appellant.

Harvey Deramus, of Birmingham, for appellees.

578

STAKELY, Justice.

This is a suit instituted by Mrs. Letha A. Weatherford Russell (appellant) against The Praetorians, Incorporated and Tom H. Penton (appellees). The complaint as originally filed consisted of two counts designated as Counts 1 and 2. From time to time additional counts, designated as Counts 1-A, 2-A, 3-A and AA, were filed. The court sustained the demurrer to each of these counts. The plaintiff made a motion for a non-suit. The court granted the motion and entered an order declaring a non-suit. Hence this appeal. § 819, Title 7, Code of 1940.

Count 1 is lengthy and involved and offends against the rule that requires simplicity and brevity in pleading. It covers about five pages of transcript paper and makes the mistake of attempting to state the evidence, against which § 213, Title 7, Code of 1940, was enacted. Birmingham Ry. Light & Power Co. v. Ely, 183 Ala. 382, 394, 62 So. 816. But the case is here in a proceeding to review the action of the trial court in sustaining the demurrer to the count and not on a question of prolixity. § 213, Title 7, Code of 1940.

In brief the allegations of Count 1 set up the following: The Praetorians, Inc., was engaged in the business of writing fraternal life insurance and had in its employment as general agent in the City of Birmingham one E. Y. Adams. The plaintiff was employed as a soliciting agent and during the first year of her employment sold a considerable volume of business. After she became so engaged she took out a policy upon the life of her husband with defendant in the sum of $2,000. Upon his death she collected the proceeds of this policy which, together with the proceeds of other policies, gave her an amount of money in cash of approximately $8,000. E. Y. Adams began discussing with the plaintiff an investment by her in a retirement endowment income policy issued by The Praetorians, telling her of the various benefits which would accrue to her therefrom. Adams advised her to go to see the officials of The Praetorians at the home office of the company in Dallas, Texas, in order to discuss the investment. She made the trip and invested about $5,000 with the company and received from the company two of its retirement income endowment policies. Thereafter Adams offered to put her in charge of the office of The Praetorians located in Ensley and she was told that she would receive from the sale of policies through the Ensley Office a greater amount than she was presently making. There is nothing in the count to show that Adams was at the time acting within the line and scope of his authority or that he had any connection or relationship with Tom H. Penton, the other defendant to the cause. It is alleged that the plaintiff believed the statement of Adams to be true but it is nowhere alleged that she relied thereon. Jordan & Son v. Pickett, 78 Ala. 331; Wall v. Graham, 129 Ala. 396, 68 So. 298.

Subsequently plaintiff found out that she was not allowed to do certain things and was required to pay the "nets" on all policies issued under certain conditions. There is nothing in the allegations of the count to show the meaning of the word "nets". This leaves the meaning of the count at this point in obscurity. The count further shows that by reason of the requirement that plaintiff make certain payments or assume certain obligations to The Praetorians under this arrangement she was paying to the defendant (which one it is not clearly made to appear) more money than she was receiving as commissions. There is nothing to show that the defendants or either of them were guilty of any fraudulent act in this connection or that the acts of the defendants or either of them were wrongful in this connection.

Subsequently the plaintiff was taken to a hospital on account of an accident and one Green Coats was put in charge of her office. Green Coats wrote a large amount of business on some of which the plaintiff was charged "nets" and "non-takes". The exact way in which this was done in not disclosed. Adams died apparently at this stage of the proceeding and the defendant Tom H. Penton assumed his duties and took his place.

Tom Penton prevailed upon the plaintiff to execute to The Praetorians "checks in the sum of ——— dollars to cover payment of said 'nets' and 'non-takes.' " She told Penton that she did not have sufficient funds in her bank to pay the checks when same would be presented for payment. He thereupon told her that if she would execute the checks he would assure her that the checks would not be presented for payment at her bank but would be held until he could work out a plan to take care of the matter. The count then alleges that the plaintiff upon said assurances from Penton and fully relying on his statement, executed the checks and delivered them to him. Instead of retaining the checks, Penton forwarded the checks to The Praetorians at their home office in Dallas, Texas, where they were deposited in a bank for collection. The checks were sent through "banking circles" for collection and upon their presentment for payment at the plaintiff's bank in the City of Birmingham, they were returned "unpaid." Plaintiff was notified by letter June 5, 1940, that "her contract with The Praetorians which expired as of June 30, 1940, will not be renewed." Plaintiff was working under a surety bond. The bonding company was sued for the alleged shortage of plaintiff and a judgment recovered against the bonding company in the courts in Dallas, Texas.

The count then closes with the allegation "Plaintiff avers that by reason of and as a proximate consequence of said scheme as was devised as hereinabove set out as aforesaid, plaintiff was defrauded out of a sum of money then and there due to have been paid to her in excess of $1600 from earned commissions. She was defrauded out of her investment with The Praetorians. She was humiliated and embarrassed and suffered great mental pain and anguish etc."

The allegations of the count show a number of transactions with E. Y. Adams, now deceased. But there is nothing in the count to show that the defendant Penton was in any way responsible for the acts or conduct of Adams. There is nothing, as stated, to show that Adams was an agent, servant or employee of Penton or made any fraudulent statements or representations while acting as such agent, servant or employee. It should be noted that the count attempts to base the plaintiff's cause of action upon alleged wrongs committed by Adams with a separate and distinct alleged wrong subsequently committed by the defendant Penton. So far as Penton is concerned, the allegations of the count do not connect him with the alleged acts of Adams.

So far as The Praetorians are concerned, it is not clear, construing the pleading against the pleader, that there was any fraudulent scheme or purpose to procure a fund of money from the plaintiff and then fraudulently to set up charges against this fund so as to deprive the plaintiff of her money. For aught that appears from the allegations of the count, she received the endowment policies which she purchased and there is nothing to show that the policies which The Praetorians delivered to her were different in any way from what she was led to believe they would be. It is axiomatic that the burden is upon the plaintiff to allege the facts constituting the alleged fraud not mere conclusions. Green, Supt. of Banks, v. Martin et al., 221 Ala. 514, 129 So. 465; Richardson v. Curlee et al., 229 Ala. 505, 158 So. 189.

Substantially speaking the criticism directed against Count 1 may likewise be directed against Count 1–A. Count AA appears to be more or less a redraft of Count 1 and substantially speaking is subject to the same criticism. In addition thereto it should be noted that although the plaintiff has sued two defendants, Count AA begins by claiming damages of the "defendant." We think it is clear from reading Count AA that the defendant referred to is The Praetorians and not Tom H. Penton. However, where there is more than one defendant, the plaintiff should claim against all of the defendants and not merely one defendant. 49 C.J. p. 141. See also McKinley et al. v. Campbell, 217 Ala. 139, 115 So. 98; Corona Coal Co. v. Huckelbey, 204 Ala. 508, 86 So. 25; Central of Georgia v. Carlock, 196 Ala. 659, 72 So. 261. Tom Penton should not be required to defend against the allegations of Count AA.

The defendants demurred separately and severally to Count AA, a situation which the court noted in the judgment

580

entry and then sustained the demurrer. As to this ruling the appellant made the following assignment of error:

"The court committed error to reverse in sustaining the defendants (Appellees) demurrer to Count AA of plaintiff's complaint as amended."

Since the assignment of error is not based upon this ruling severally, and there was no error in sustaining the demurrer of Tom Penton, the aforesaid assignment of error cannot be sustained. Western Ry. of Ala. v. Arnett, 137 Ala. 414, 34 So. 997; Sovereign Camp W. O. W. v. Waller, 232 Ala. 170, 167 So. 563; Green v. Waynesboro Motor Co., 217 Ala. 348, 116 So. 363.

 Counts 2, 2–A and 3–A will appear in the report of the case. Assuming that count 2 describes the money alleged to have been converted in as accurate a manner as practicable (Howton v. Mathias, 197 Ala. 457, 73 So. 92), yet count 2 attempts to allege two separate and distinct conversions in the same count. Under the decisions of this court, this renders the count bad. H. H. Hitt Lumber Co. v. Sherman, 189 Ala. 681, 66 So. 639; Louisville & N. R. Co. v. Cofer, 110 Ala. 491, 18 So. 110; Goodyear Tire & Rubber Co. v. Gadsden Sand & Gravel Co., ante, p. 273, 27 So.2d 578.

 The subject matter of the conversion in Counts 2–A and 3–A is money. Count 2–A claims for the conversion of $6,600 in cash and Count 3–A claims for the conversion of $25,000 in cash, lawful currency of the United States of America. Ordinarily an obligation to pay money is enforceable by assumpsit or an action of debt. Trover for money does not lie except for specific money capable of identification. The rule was stated by this court in Hunnicutt v. Higginbotham, 138 Ala. 472, 35 So. 469, 470, 100 Am.St. Rep. 45, as follows:

"It seems to be well settled, that trover lies for the conversion of money, where there is an obligation on the part of defendant to return specific coin or notes intrusted to him. Moody v. Keener, 7 Port. 218, 231; 26 A. & E. E. Law (1st Ed.) 766.

"'It may be stated as a general rule, that although an obligation to pay money is ordinarily enforceable by assumpsit or debt, yet trover lies for the conversion of "earmarked" money or specific money capable of identification, i. e., money in a bag or coins or notes which have been intrusted to defendant's care.'"

 There is nothing in these counts to show that recovery is sought of specific money capable of such identification as to make the counts good in trover. The money is not described with such reasonable certainty that the jury may know what money is meant and the defendants protected from another action based upon the same grounds. 65 C.J. p. 75.

Without further discussion, we think that enough has been said to justify the rulings of the lower court.

Affirmed.

GARDNER, C. J., and FOSTER and LAWSON, JJ., concur.