Green Tree Acceptance, Inc., appeals from a judgment awarding Louis Tunstall $ 176,367 on his claims alleging conversion, breach of trust, and breach of fiduciary duty. Tunstall cross appeals from the trial court's order requiring a remittitur of $ 200,000 of the jury's award.[1] Green Tree also had filed an earlier notice of appeal before the judgment became final, but that appeal is due to be dismissed as premature. The principal issue is whether the circuit court erred in denying Green Tree's motion for a judgment notwithstanding the verdict on the ground that an action will not lie for conversion of money except in the case of specific money capable of identification.
In January 1991, Tunstall purchased a mobile home from Don Graves, Inc. ("Graves"). Tunstall financed $ 14,701.20 of the purchase price by executing an installment sales contract. The contract shows Green Tree as assignee, but it appears that Green Tree approved Tunstall's credit before the sale was closed. Green Tree's "Manufactured Home, Home Improvement Credit Loan Verification" shows an allowance of $ 1200 for an air conditioner and heat pump. On January 29, 1991, a Green Tree employee spoke to Tunstall by telephone, and she wrote information on a form entitled "Telephone Audit (Prior to Purchase of a Retail Installment Contract)." Tunstall told her that the heater and air conditioner had not been delivered. On the basis of this interview, Green Tree withheld $ 1200 from the check it sent to Graves. On February 1, Green Tree executed a second check to Graves for $ 1200, with Tunstall's loan number and the notation "A/C Holdback," and placed the check in a file.
Graves went out of business in March 1991, and a heating and air conditioning system was not installed in Tunstall's mobile home until January 1992. Green Tree paid the installer $ 1150 and credited $ 50 to Tunstall's loan. In August 1991 Tunstall filed an action against Graves and the manufacturer of the mobile home; in August 1992 Tunstall amended his complaint to add claims against Green Tree. The manufacturer settled the claims against it (unrelated to the claim at issue here), and the case went to trial against Graves and Green Tree. The jury returned a verdict of $ 1367 against Graves; no one has appealed from the judgment on that verdict. The jury returned a verdict of $ 1367 compensatory damages and $ 375,000 punitive damages against Green Tree. The circuit court conditioned its denial of Green Tree's motion for a new trial on Tunstall's accepting a remittitur of $ 200,000. Green Tree appealed. Tunstall refused to accept the remittitur and cross appealed from the grant of Green Tree's motion for new trial.
Tunstall's complaint against Green Tree alleged that it "received specific money from" Graves, "which said sum of money was specifically set aside" to purchase a heating and air conditioning system. Tunstall alleged that he telephoned Green Tree on numerous occasions but was never told that Green Tree "had his money." The conversion count concluded that, on or about February 1, 1991, Green Tree "converted to its own use that specific sum of money which it had received for the sole and express purpose" of purchasing and installing a heating and air conditioning unit for his mobile home. Another count alleged that Green Tree held the money in trust for Tunstall for the purchase of a heating and air conditioning system, that it breached its duty under this trust by failing to inform Tunstall that it held the money, by failing to deliver the money to him, or by failing to purchase and install the heating *Page 1386 
and air conditioning system. A third count alleged that Green Tree "became [a] fiduciar[y]" when it received the money and that it breached its fiduciary duty when it failed to act, as alleged in the previous count.
The evidence showed that Green Tree maintains a "zero balance cash management account" at a bank to make payments to mobile home dealers such as Graves. No money is kept in the account. Instead, Green Tree has a line of credit with the bank and, as Green Tree's loan supervisor testified, "once those checks are presented to the bank for payment, we go to our credit line and borrow that amount of money to pay those checks at the end of each day." Thus, Green Tree argues, no specific money was set aside for Tunstall's loan or for the purchase and installation of the air conditioner.
 "To constitute conversion, there must be a wrongful taking or a wrongful detention or interference, or an illegal assumption of ownership, or an illegal use or misuse of another's property. Ex parte SouthTrust Bank of Alabama, N.A., 523 So.2d 407, 408 (Ala. 1988); Ott v. Fox, 362 So.2d 836 (Ala. 1978). Conversion requires 'a wrongful exercise of dominion over property in exclusion or defiance of a plaintiff's rights, where said plaintiff has . . . the immediate right of possession.' Empiregas of Gadsden, Inc. v. Geary, 431 So.2d 1258, 1260 (Ala. 1983).
 "Generally, an action will not lie for the conversion of cash. However, if the cash at issue is 'specific money capable of identification,' claims of conversion may be appropriate. Hunnicutt v. Higginbotham, 138 Ala. 472, 35 So. 469
(1903); Russell v. The Praetorians, Inc., 248 Ala. 576, 28 So.2d 786 (1947)."
Covington v. Exxon Co., U.S.A., 551 So.2d 935 (Ala. 1989).
In Lewis v. Fowler, 479 So.2d 725, 726 (Ala. 1985), the Court stated:
 "The requirement that there be 'earmarked money or specific money capable of identification' before there can be a conversion has been complicated as a result of the evolution of our economic system.
 "Now, in conversion cases, the courts are not confronted so much with a particular piece of money, i.e., a coin or a bill, but with identified or segregated sources from which money has come or types of accounts into which money has been deposited."
Thus, the Court has reversed summary judgments for defendant insurers on claims that the insurer converted funds from the plaintiffs checking account by wrongfully presenting preauthorized checks for premium payments. Gray v. LibertyNat'l Life Ins. Co., 623 So.2d 1156 (Ala. 1993); Gillis v.Benefit Trust Life Ins. Co., 601 So.2d 951 (Ala. 1992). However, the Court has subsequently held that the mere payment of premiums for a wrongfully issued policy does not support a conversion action:
 "The present case is similar to Gillis in that both cases involved the payment of insurance premiums. That, however, is as far as the similarity goes. In Gillis, the insurance premiums were drawn by the defendant insurance company directly from a specific account belonging to the plaintiffs. In the present case, the only evidence is that the premiums were paid by the Willinghams to United. There is no evidence that leads us to conclude that the subject money is or was in any manner segregated or identifiable.
 "Even if the Willinghams are entitled to a refund of their premiums or to other money damages, the relationship between the Willinghams and United is akin to that of a debtor and creditor. We have stated that where there is 'only a relationship of debtor [and] creditor, an action for conversion of funds representing the indebtedness will not lie against the debtor.' Lewis v. Fowler, 479 So.2d 725, 727 (Ala. 1985) (citing Lyxell v. Vautrin, 604 F.2d 18 (5th Cir. 1979))."
Willingham v. United Ins. Co. of America, 628 So.2d 328, 333
(Ala. 1993).
Similarly, in Lewis v. Fowler, supra, the Court held that the withholding of funds from the plaintiff's wages pursuant to a garnishment would not support a conversion action in a situation where the funds had not been paid to the garnishor. In Covington v. *Page 1387 Exxon Co. U.S.A, supra, the Court held that a conversion action would not lie where escrow funds had been commingled and deposited in numerous banks nationwide. In Johnson v. Life Ins.Co. of Alabama, 581 So.2d 438, 443 (Ala. 1991), the Court held that an action would not lie for the alleged conversion of life insurance premiums paid by the plaintiffs, because "there was no specific, identifiable coin or bill [and no] evidence that the money had been placed into a separate account." In GreeneCounty Bd. of Educ. v. Bailey, 586 So.2d 893, 899-90 (Ala. 1991), the Court reversed a Rule 12(b)(6), Ala.R.Civ.P., dismissal of an action because "The allegations of the complaint suggest that the plaintiff may be able to prove that the defendants . . . converted to their own use funds that had been specifically deposited in the '[Paramount High School] lunchroom account' to pay for the high school's breakfast and lunch programs."
In this case, there is no evidence of money placed in an account at all, much less money placed in a specific account for the benefit of Tunstall. According to the evidence, Green Tree maintained a zero balance in its account and at the end of each day would borrow against its line of credit the amount needed to pay the checks presented that day. It wrote a check to Graves for $ 1200, but it never delivered the check and never deposited any money into an account to pay it. Tunstall does not argue that Green Tree converted the check itself; aside from any other impediments to such a claim, we do not see how Tunstall could argue that he had title to, or an immediate right to possession of, a check made payable to Graves.
Green Tree became a creditor of Tunstall, whether through its initial approval of the loan or through its purchase of the installment sales contract from Graves. Although it assigned a number to Tunstall's loan, it did not set aside funds to an account with this number. Any funds it held that might be used to fund this loan or to pay for the air conditioner were commingled with other money held by Green Tree. SeeCovington v. Exxon Co., supra. As stated in the cases cited above, a conversion action will not lie when there is merely a relationship of debtor and creditor.
For the foregoing reasons, the circuit court erred in denying Greentree's motions for a directed verdict and for a J.N.O.V. on the conversion claim.
We see no error in submitting to the jury the claims alleging breach of trust and breach of fiduciary duty. A jury could find that, by withholding the $ 1200 to ensure that the heating and air conditioning system was installed, Green Tree created a trust in that amount and imposed on itself a duty to act for Tunstall's benefit. See Coosa River Water, Sewer FireProtection Authority v. SouthTrust Bank of Alabama, N.A.,611 So.2d 1058, 1062 n. 5 (Ala. 1993), in which the Court referred to a "declaratory trust" as a trust in which "a settlor declares himself trustee of property for the benefit of another, the beneficiary," citing, inter alia, Jones v. Ellis,551 So.2d 396 (Ala. 1989). "[N]o particular form of words is required to create a trust, but . . . any instrument in writing signed by the parties, or party, at the time of the trust's creation, or subsequently, will suffice, if the nature, subject matter, and objects of the trust [are] manifested with reasonable certainty by the instrument." Jones v. Ellis, 551 So.2d at 399. Green Tree's loan verification reflecting a $ 1200 allowance for the heating and air conditioning system, its telephone audit showing that the system had not been installed, and the $ 1200 check that it issued and filed with the notation "A/C Holdback" suffice to create a fact question as to whether Green Tree created a trust for Tunstall's benefit with itself as trustee. Similarly, an action alleging breach of fiduciary duty could properly lie under these facts.
However, the judgment must be reversed, because the conversion count was not supported by the evidence. Green Tree made specific directed verdict and J.N.O.V. motions directed to that count; the court denied those motions and the jury returned a general verdict. In such a circumstance, a reviewing court will not presume that the verdict was returned on a good count. Old Southern Life Ins. Co. v. Spann, 472 So.2d 987 (Ala. 1985); Aspinwall v. Gowens, *Page 1388 405 So.2d 134 (Ala. 1981). In fact, the only count on which Tunstall sought punitive damages was the conversion count. We do not presume that the verdict was returned only on the conversion count, however, because the instructions to the jury did not limit the award of punitive damages to the conversion count. We note that the complaint sought punitive damages only on the conversion count only to point out that it would be especially inappropriate in this case to affirm the judgment simply because a good count was submitted to the jury.
For the foregoing reasons, the judgment is reversed and the cause is remanded. Tunstall's cross appeal is dismissed as moot.
1921848 — REVERSED AND REMANDED.
1921847 — DISMISSED AS MOOT.
1921767 — DISMISSED AS PREMATURE.
HORNSBY, C.J., and SHORES, HOUSTON, STEAGALL, KENNEDY and COOK, JJ., concur.
INGRAM, J., concurs in 1921767, but dissents in 1921847 and 1921848.
[1] Although Green Tree's notice of appeal was filed in the trial court earlier than Tunstall's, it was given a higher docket number in this Court. The parties have agreed that Green Tree's appeal, number 1921848, is the appeal in this case and that Tunstall's appeal, number 1921847, is a cross appeal.