Tangie McGhee appeals from a judgment based on a directed verdict for the defendant Oryx Energy Company in a negligence action.
On December 30, 1990, Oryx Energy sold 10,250 gallons of propane gas to Economy Gas Company, of Childersburg, which, in turn, sold it to Gladys McCraven, doing business as Propane Gas Company, of Talladega. An Economy Gas truck picked up the propane gas at a pipeline company in Opelika and delivered it to McCraven in Talladega.
On November 5, 1991, McCraven sold 100 gallons of the propane gas to Katherine McGhee of Talladega, who had been a customer of McCraven's since 1990. Two of McCraven's employees, Billy Wideman and William Wyatt, delivered the gas on the same day to McGhee's house, where she resided with her daughter, Tangie. The propane gas was to provide heat to four unvented gas space heaters located in various rooms throughout the house.
When the gas was delivered, Katherine McGhee informed Wideman that she and Tangie smelled gas even when the heaters were off and requested that Wideman check the heaters for any possible leaks. Wideman checked for gas leaks around the fittings of the heaters and performed a "sniff test." Wideman concluded that there was not a gas leak; however, the McGhees continued to smell gas and reported that fact to McCraven's office later that day.
The next day, November 6, McCraven employee Brinton Coughran responded to the report and performed the same tests as Wideman had performed on the previous day, but he could not find a leak or smell gas. Before Coughran left the McGhee residence, he lit three space heaters in the house and assured Tangie that it was safe to do so. Within a few minutes after Coughran left, the house was destroyed by a propane gas explosion and Tangie was injured in that explosion. It was later determined, and is undisputed, that the explosion was caused by a gas leak from a rusty pipe connected to the four heaters.
Tangie McGhee sued McCraven, doing business as Propane Gas Company; McCraven's insurer, Ranger Insurance Company; and Oryx Energy, alleging negligence on the part of Oryx Energy that she claimed resulted in her injuries. McCraven and Ranger Insurance Company, after entering into a pro tanto settlement with Tangie, were later dismissed as defendants, and Tangie's claims against Oryx Energy went to trial. Tangie alleged specifically that Oryx Energy had negligently failed (1) to properly odorize the propane gas that was involved in the explosion that injured her; (2) to warn propane gas users of the availability of a propane gas leak warning device; (3) to warn her and/or McCraven about the importance of performing pressure tests on gas systems when a leak is suspected and to warn them of "odor fade" in propane gas, i.e., the tendency of an odorant agent added to the otherwise odorless propane gas to lose its scent over time; and (4) to restrict the sale of propane gas to distributors known to Oryx Energy to have adequate safety and testing procedures for handling and delivering propane gas to consumers.
At the close of Tangie's case, the trial court granted Oryx Energy's motion for a directed verdict on all four claims asserted by Tangie. Tangie had admitted that Oryx Energy had not negligently failed to assure that the propane was properly odorized and had not negligently failed to warn her about the existence of available gas leak warning devices, but she contends on appeal that the *Page 855 
court erred in directing a verdict on the remaining counts.
Tangie first argues that there was evidence to establish that Oryx Energy had a duty to warn its distributors and consumers about the possibility that the odorant in the propane might fade and thus make it difficult to detect a gas leak. She argues that, had McCraven's employees been properly educated about "odor fade," they would not have concluded that there was no leak merely because they could not detect the smell of gas.
We note that Katherine and Tangie McGhee testified that they smelled the gas on the day it was delivered and that they were afraid to light the heaters because they suspected a gas leak. They say they continued to detect this smell up until the explosion, although it apparently was not detectable to McCraven's employees. There was evidence that some individuals are better able to detect the odorant than others, simply because of differences between individuals in their olfactory senses or because one who becomes accustomed to the smell might not detect it so well. This evidence indicates that the odorant in the propane gas simply did not fade and therefore could not have caused Tangie's injuries; however, because a jury would be free to draw the inference that the odorant had faded to the point that some individuals could not smell it, we will base our discussion of this issue upon that inference.
A manufacturer is not liable if it has made reasonable efforts to convey product information and/or warnings that, because of circumstances beyond its control, were not passed on to, or were not received by, the ultimate user. Purvis v. PPGIndustries, Inc., 502 So.2d 714 (Ala. 1987). Additionally, where a third party has an independent duty to warn the ultimate user of the dangers associated with the use of a product, the manufacturer is justified in relying upon that third party to perform its duty. Purvis, 502 So.2d at 720. In Purvis, the ultimate user of a dry cleaning solvent brought a products liability action against the manufacturer of the solvent, based on the theory that the manufacturer had a duty to warn her of the dangerous nature of the chemical and of the possibility that she might be injured by exposure to the solvent. This Court affirmed the summary judgment in favor of the manufacturer, holding that the fact that the ultimate consumer did not actually receive the manufacturer's warnings, which were given only to the immediate purchaser, did not show that the manufacturer had breached its duty to warn of the dangerous nature of the dry cleaning solvent. Purvis, 502 So.2d at 719.
Here, the evidence shows that Oryx Energy manufactures propane gas in Texas, places it into a pipeline along with propane gas produced by other manufacturers, and sells it to various retail distributors in Alabama by allowing them to take certain amounts of propane out of the pipeline as it passes through Opelika. Oryx Energy has no way of ascertaining the identity of the ultimate customers to whom the propane will be sold after the retail distributor takes the propane out of the pipeline and, therefore, Oryx Energy has no way to convey product information or warnings to the ultimate user except through its distributors.
When a propane distributor obtains the gas from the Opelika pipeline, the distributor receives a bill of lading; that bill of lading contains a warning about the phenomenon known as "odor fade" in propane gas. The bill of lading that Oryx Energy provided to Economy Gas, and which Economy Gas provided to McCraven, contained the following warning:
 "Odor fading of ethyl mercaptan caused by chemical oxidation, absorption and adsorption can occur in vessels and distribution systems of L.P. gas. The presence of rust, moisture or air may increase the fading problem. Vessels and systems should be protected from rust and purged of moisture and air and kept vapor tight to reduce the risk of such fading. Propane stored in such vessels should be tested periodically to be sure adequate odorization is maintained."
(Emphasis added.)
McCraven and her employee Coughran testified that they knew of "odor fade." *Page 856 
Wideman testified that he knew about and understood the warning concerning odor fade on the bill of lading provided by Oryx Energy. McCraven testified that she was familiar with the circumstances under which pressure tests were to be performed, that she gave a test to her employees regarding pressure testing, and that she required her employees to study the regulations and to keep them in the service trucks. This evidence establishes that Oryx Energy fulfilled its duty to warn its distributors concerning odor fade; accordingly, the trial court properly directed a verdict for Oryx Energy on the claim alleging a breach of that duty.
Tangie next contends that Oryx Energy had a duty to restrict the sale of propane to distributors it knew to have adequate safety and testing procedures and that it breached this duty by selling the propane to McCraven. Tangie argues that Oryx Energy should have ensured that McCraven would perform pressure tests in circumstances where a gas leak is suspected, as is required by the Alabama Liquified Petroleum Gas Board (hereinafter "L.P. Gas Board").
The L.P. Gas Board adopts regulations and standards regarding proper methods for handling and transporting propane gas, as well as regulations and standards regarding installation and operation of systems and equipment for the storing and handling of propane gas. The regulations include pamphlets 54 and 58, promulgated by the National Fire Protection Association ("NFPA") and the American National Standards Institute. Pamphlets 54 and 58 govern the handling, distribution, and sale of propane gas, as well as the installation, repair, and maintenance of piping systems and other propane gas equipment.
The L.P. Gas Board requires that all employees of a commercial propane gas distributor be tested on the regulations, and it has disciplinary power over Class A permit holders to enforce the regulations. Permit holders are inspected semi-annually by a representative of the L.P. Gas Board for compliance with its regulations. Oryx Energy sells propane gas in this state only to individuals or companies holding a Class A permit with the L.P. Gas Board.
McCraven has been a retail distributor of propane gas for over 37 years and became a Class A permit holder with the L.P. Gas Board in 1965. McCraven was not required to undergo testing for this permit, because of a "grandfather" clause in the L.P. Gas Board's regulations; however, she is familiar with the requirements of applicable regulations setting forth the circumstances under which pressure tests should be performed, has been a member of the L.P. Gas Board, and is visited semi-annually by an L.P. Gas Board member, who checks for regulation compliance.
All contracts between Oryx Energy and McCraven require McCraven to comply with NFPA pamphlets 54 and 58, as well as with other L.P. Gas Board regulations, including those describing the circumstances under which pressure tests are required and how they are to be performed. Additionally, Oryx Energy regularly provides McCraven with relevant safety data sheets regarding propane gas, and McCraven provides them to her employees.
It is clear that Oryx Energy provided adequate warnings directly to McCraven about the dangers of propane gas and that it took measures to involve itself only with Class A permit holders. We decline to hold that Oryx Energy is required to ensure that each of its customers always complies with each L.P. Gas Board regulation and safety recommendation. We therefore also affirm the summary judgment insofar as it was based on the directed verdict for Oryx Energy on Tangie McGhee's fourth claim.
AFFIRMED.
ALMON, SHORES, HOUSTON and INGRAM, JJ., concur. *Page 857