689 So.2d 3 (1997)
PALM HARBOR HOMES, INC.
v.
Rosemond D. CRAWFORD and Cecilia Ann Crawford.
1951156.
Supreme Court of Alabama.
January 10, 1997.
Rehearing Denied March 14, 1997.
*5 W. F. Horsley of Samford, Denson, Horsley, Pettey & Martin, Opelika; James R. McKoon, Jr., Phenix City; Walter R. Byars of Steiner, Crum & Baker, Montgomery; and J. Pelham Ferrell, Clayton, GA, for Appellant.
Sam E. Loftin of Loftin, Herndon & Loftin, Phenix City, for Appellees.
BUTTS, Justice.
The defendant, Palm Harbor Homes, Inc., appeals from a trial court judgment based on a jury verdict in favor of the plaintiffs Rosemond D. Crawford and Cecilia Ann Crawford. We affirm in part, reverse in part, and remand.

I.
Rosemond Crawford purchased for himself and his wife Cecilia Crawford a custom-built mobile home manufactured by Palm Harbor; he purchased it from All Star Mobile Homes, Inc. All Star is a retailer of Palm Harbor products in Opelika, Alabama. In July 1992, before Mr. Crawford purchased the mobile home, the Crawfords visited the Palm Harbor factory in Boaz, Alabama, and took a factory tour. The Crawfords testified that during their visit to the factory, they were told that if that they bought a Palm Harbor home, Palm Harbor would "do everything for them except sell them the home."
During the visit, the Crawfords were given a brochure that contained an introduction by "your Palm Harbor retailer" and described a guided tour of the factory. The last page of the brochure referred to a "Palm Harbor Sales Center" and listed several ways the sales center would assist the purchaser of a Palm Harbor home. At that point, the brochure included the following statement: "We will handle the delivery and setup of your home just as though we were the ones who were going to live in it."
In August 1992, Mr. Crawford ordered a custom-built, double-wide Palm Harbor home from All Star for $41,000. He made a $4,100 down payment on the home at that time. Although the Crawfords testified that up to that point they had still not been informed that Palm Harbor would not set up their mobile home, the purchase agreement with All Star that Mr. Crawford signed provided that delivery and setup of the home was to be performed by All Star.
After the Crawfords' home was manufactured by Palm Harbor, it was delivered to the All Star lot in October 1992. While still located on the All Star lot, the Crawfords' home was accidentally damaged when a truck delivering another mobile home backed into it. All Star contacted Palm Harbor regarding the damage, and Palm Harbor dispatched an employee to repair the home. However, neither All Star nor Palm Harbor disclosed to Mr. Crawford that the new home had been damaged.
A few days before the scheduled meeting for Mr. Crawford to close the purchase of the mobile home, All Star telephoned him and informed him that Virgil Adams, Sr., would visit the site the Crawfords had chosen to have the home set up on. Although Mr. Adams had been employed by All Star to set up the mobile home, Mr. Crawford testified that he was not told at that time who Mr. Adams worked for. On October 23, 1992, Mr. Crawford completed the closing transaction for the purchase of his mobile home at the All Star office. Mrs. Crawford was not a party to the purchase of the home.
Approximately a week after the closing, and after the mobile home had been delivered to its site, Mr. Crawford located the mobile home's installation manual inside the mobile home. The installation manual included the Palm Harbor home warranty. He had not seen or read the Palm Harbor warranty before that time. The setup of the home by All Star's crew of workers directed by Mr. Adams took several weeksmuch longer than the Crawfords had been told it would take.
After the Crawfords moved in, representatives from All Star conducted a walk-through of the mobile home in November 1992, and made a list of items needing correction. The list was forwarded to Palm Harbor for repair under its warranty. Palm Harbor did not send a representative to repair the items until almost two months later, in January 1993, and the man did not perform all of the *6 requested repairs. The Crawfords discovered further defects and sent another list to All Star and Palm Harbor. The Crawfords were notified that a Palm Harbor repairman would arrive to perform the repair work on February 21, 1993, but no repairman arrived on that date.
On February 25, 1993, the Crawfords made a complaint regarding the condition of their mobile home to the Alabama Manufactured Housing Commission ("AMHC"). Palm Harbor rescheduled the repair work for March 6, 1993, but again no repairman arrived on that date. Thereafter, a representative of the AMHC inspected the Crawfords' home and compiled a lengthy list of needed repairs. More than 20 of the needed repairs were attributed to manufacturing defects; however, others were attributed to a faulty, unlevel setup of the home. The AMHC forwarded the list to Palm Harbor, but Palm Harbor took no action in regard to those defects other than to send a representative to the Crawfords' home to make his own list of required repairs. Then in May 1993, Palm Harbor sent Mr. Adams and his crew, the same workers All Star had hired to set up the Crawfords' home, to do repair work on the home. However, Mrs. Crawford would not let them perform the work, telling them she had learned they were not licensed by the AMHC.
The Crawfords filed suit in August 1993, alleging breach of express and implied warranties against Palm Harbor and All Star, and alleging that Palm Harbor, All Star, and Virgil Adams, Sr., had negligently or wantonly caused or allowed the mobile home to be set up improperly. The complaint was later amended to add claims against Cannon Manufactured Housing Group, All Star's parent company. The amended complaint also added claims alleging that Palm Harbor had intentionally or recklessly misrepresented that it would handle the delivery and setup of the Crawfords' home, and alleging that Palm Harbor and All Star had fraudulently suppressed the fact that the mobile home had been damaged.
In January 1995, All Star, Cannon, and Mr. Adams filed a motion to stay the trial pending arbitration of the claims against them according to the terms of the sales contract between All Star and Mr. Crawford. In March 1995, the trial court entered an order staying trial of the claims against All Star and Cannon, in favor of arbitration, and denying the stay as to Mr. Adams. However, in July 1995, the trial court also referred the Crawfords' claims against Mr. Adams to arbitration.
In August 1995, nearly eight months after All Star, Cannon, and Adams had moved for arbitration, and five months after the motion had been granted as to All Star and Cannon, Palm Harbor moved to compel arbitration. The trial court denied the motion; however, Palm Harbor did not file an interlocutory appeal of that ruling.
The Crawfords then filed a second amended complaint, alleging several counts against Palm Harbor: (1) breach of implied and express warranties (as to both Mr. and Mrs. Crawford),[1] (2) fraudulent misrepresentation that it would handle the delivery and setup of the mobile home (as to Mr. Crawford), (3) fraudulent suppression of the fact that the home had been damaged (as to Mr. Crawford), and (4) fraudulent misrepresentation that the home was free of defects and had been constructed in compliance with federal standards (as to Mr. Crawford). The Crawfords sought compensatory and punitive damages.
The case went to trial in November 1995. Palm Harbor moved for a directed verdict at the close of the Crawfords' evidence and again at the close of all evidence. The trial court denied the motions and submitted the case to the jury. The jury returned two verdicts: a general verdict in favor of Mr. Crawford awarding $63,000 in compensatory damages and $1,000,000 in punitive damages, and a verdict in favor of Mrs. Crawford on her breach of warranty claims awarding $50,000 in compensatory damages for emotional *7 distress and physical injury.[2] The trial court entered a judgment based on the verdicts. Palm Harbor then moved for a J.N.O.V., a new trial, or remittitur. Following a Hammond[3] hearing, the trial court denied Palm Harbor's post-judgment motions. Palm Harbor appeals.

II.
Palm Harbor has raised several issues on appeal: (1) whether the trial court erred in denying its motion to compel arbitration, (2) whether the trial court erred in denying its motions for a directed verdict and submitting the fraud claims to the jury, (3) whether the trial court erred in submitting the claim of punitive damages to the jury, (4) whether the trial court erred in denying its motion for a J.N.O.V., a new trial, or remittitur, and (5) whether the jury's award of punitive damages is unconstitutionally excessive. Palm Harbor raises no issue relating to the Crawfords' claims based on breach of warranty.

III.
We first address the issue whether the trial court erred by denying Palm Harbor's motion to compel arbitration of the Crawfords' claims against it. Although there was no arbitration agreement between Palm Harbor and the Crawfords, Palm Harbor argues that the Crawfords' claims against it should have been referred to arbitration based on the broad language of the arbitration clause contained in the mobile home purchase agreement between All Star and Mr. Crawford. Although it was not a signatory to the arbitration agreement, Palm Harbor, relying on Ex parte Gates, 675 So.2d 371 (Ala.1996), argues that the language of the arbitration agreement is such that Palm Harbor, as the manufacturer of the home, was due to be included as a party to the arbitration.[4]
In response, the Crawfords argue that the trial court correctly denied Palm Harbor's motion to compel arbitration. They make several arguments in support of their position, including the argument that Palm Harbor waived any right it had to arbitration. The Crawfords point out that Palm Harbor waited for two years after they had filed their complaint, and nearly eight months after All Star, Cannon and Mr. Adams had moved for arbitration, to file its own motion for arbitration. They also point out that Palm Harbor did not seek arbitration until just before the first trial date. They contend that by waiting so long to seek arbitration, and by failing to immediately appeal the trial court's order denying arbitration, Palm Harbor indicated a clear intent not to pursue arbitration.
In August 1992, the trial court denied Palm Harbor's motion to arbitrate, based on several grounds, including waiver. It is well established that a trial court ruling denying a motion to compel arbitration is an appealable interlocutory order. 9 U.S.C. § 16; Companion Life Ins. Co. v. Whitesell Mfg., Inc., 670 So.2d 897 (Ala.1995); Long v. Industrial Dev. Bd. of the Town of Vincent, 619 So.2d 1387 (Ala.1993); A.G. Edwards & Sons, Inc. v. Clark, 558 So.2d 358 (Ala.1990). However, Palm Harbor did not appeal the trial court's denial of its motion to compel arbitration, even though the trial was delayed and did not begin until November, several months later.
In Whitesell, this Court explained:
"It is well settled under Alabama law that a party may waive its right to arbitrate a dispute if it substantially invokes the litigation process and thereby substantially prejudices the party opposing arbitration. Whether a party's participation in an action amounts to an enforceable waiver of its right to arbitrate depends on whether the participation bespeaks an intention to abandon the right in favor of the judicial process and, if so, whether the opposing party would be prejudiced by a subsequent order requiring it to submit to arbitration. *8 No rigid rule exists for determining what constitutes a waiver of the right to arbitrate; the determination as to whether there has been a waiver must, instead, be based on the particular facts of this case."
Viewing all the facts of this case, we find it clear that Palm Harbor waived any right it may have had to compel arbitration by substantially invoking the litigation process, and that ordering the Crawfords to submit to arbitration now, after a lengthy trial and the rendering of a jury verdict, would cause them to suffer substantial prejudice. We conclude that the following facts clearly constitute a waiver of arbitration: (1) Palm Harbor's delay, in relation to All Star, Cannon, and Mr. Adams, in initially moving to compel arbitration, and (2) its failure to appeal from the trial court's denial of its motion for arbitration, and choosing instead to defend the claims against it at a jury trial. Only after the jury had returned a verdict against Palm Harbor did it attempt to appeal the order denying its motion to compel arbitration. Clearly, Palm Harbor's decision to go to trial without first appealing the order denying arbitration indicates that it freely chose the process of litigation over arbitration. Now that Palm Harbor has lost in litigation, it cannot change its mind and seek arbitration; any right it may have had to seek arbitration has been waived.

IV.
We next address the issue whether the trial court erred in denying Palm Harbor's motion for a directed verdict as to any, or all, of the three fraud claims that were submitted to the jury. In Bussey v. John Deere Co., 531 So.2d 860, 863 (Ala.1988), this Court stated:
"The standard of review applicable to a motion for directed verdict or judgment notwithstanding the verdict is identical to the standard used by the trial court in granting or denying the motions initially. Thus, when reviewing the trial court's ruling on either motion, we determine whether there was sufficient evidence to produce a conflict warranting jury consideration. And, like the trial court, we must view any evidence most favorably to the non-movant."
(Citations omitted.)
We further note that because alternative fraud claims were submitted to the jury, over directed verdict motions by Palm Harbor, and the jury rendered a general verdict as to those claims, we must determine whether Mr. Crawford offered substantial evidence in support of all the fraud claims. Green Tree Acceptance, Inc. v. Tunstall, 645 So.2d 1384 (Ala.1994); Aspinwall v. Gowens, 405 So.2d 134 (Ala.1981). In other words, is each of the three fraud counts a "good" count, or is at least one a "bad" count? If a verdict should have been directed as to one or more of the claims, then the judgment based on those claims must be reversed. Green Tree, supra. "In such a circumstance, a reviewing court will not presume that the [general] verdict was returned on a good count." Green Tree, supra, 645 So.2d at 1387.

A. Setup of the Mobile Home

Mr. Crawford alleged that when he visited the Palm Harbor factory Palm Harbor fraudulently misrepresented to him, through a sales brochure and a statement made by a Palm Harbor employee, that it would do everything for him except sell him a home. Mr. Crawford alleged that by that statement and the language of its brochure, Palm Harbor falsely represented that it would be responsible for the delivery and setup of any Palm Harbor mobile home he purchased, even though Palm Harbor was aware that it provided no such service to home purchasers. He further alleged that he relied on the representation and, as a result, was induced to purchase a Palm Harbor mobile home and that he suffered damage as a proximate result.
Palm Harbor argues that the alleged misrepresentationthat it would deliver and set up a mobile home if Mr. Crawford purchased oneis not an actionable fraud because, it says, it was not a representation of an existing fact, but was instead a promise to act in the future. Palm Harbor argues that even if such a representation was made, Mr. Crawford has not shown that it made the representation with the intent to deceive.
*9 Palm Harbor contends that the Crawfords simply misinterpreted the brochure discussing setup of a Palm Harbor mobile home given to them at the Palm Harbor factory as a brochure for the Palm Harbor factory, when it was actually a brochure for Palm Harbor retailers. Palm Harbor argues that under Alabama law one cannot allege a fraudulent misrepresentation founded solely on his or her interpretation of a document. It also contends that any statement by its employee regarding mobile home setup must have been ambiguous and, thus, should have provoked further inquiry by the Crawfords.
In response, Mr. Crawford argues that he presented substantial evidence, by his and his wife's trial testimony regarding the employee's alleged statement to them and the language of the sales brochure, that Palm Harbor represented to them that it would set up their Palm Harbor mobile home if they purchased one. Mr. Crawford argues that Palm Harbor made the representation with an intent to deceive; he argues that when Palm Harbor made the promise to set up their mobile home it had no intent to fulfill the promise, and that this is evident because it was not licensed to set up mobile homes in Alabama and had never set up mobile homes.
In its order denying Palm Harbor's post-judgment motions, the trial court stated the following regarding this fraud claim:
"There was evidence from which the jury could find, by a clear and convincing standard, that Palm Harbor deceived the Plaintiffs by representing to them in writing and orally that Palm Harbor would handle the delivery and set-up of their mobile home. This occurred when the Plaintiffs visited the Palm Harbor factory in Boaz, Alabama, prior to the Plaintiffs' purchase of the Palm Harbor home which is the subject of the complaint."
This claim alleges the "promissory" species of fraud. In order to establish promissory fraud, a plaintiff must show: (1) that the defendant made a false misrepresentation; (2) of a material fact; (3) that is justifiably relied upon; (4) that the plaintiff suffered damage as a proximate result; (5) that at the time of the misrepresentation, the defendant intended not to perform the promised act; and (6) that the defendant had an intent to deceive. Gewin v. TCF Asset Mgmt. Corp., 668 So.2d 523 (Ala.1995); Pinyan v. Community Bank, 644 So.2d 919 (Ala.1994). Viewing the evidence in a light most favorable to Mr. Crawford, the nonmovant in regard to the directed verdict and J.N.O.V. motions, we conclude that he presented substantial evidence in support of his claim. He presented substantial evidence that Palm Harbor represented to him that it would deliver and set up his mobile home if he purchased a Palm Harbor home,[5] that he justifiably relied upon the representation by purchasing a Palm Harbor home,[6] and that he suffered damage as the result of his purchasing a home that was damaged when it was improperly set up by unlicensed representatives of All Star. He also presented substantial evidence, albeit circumstantial, that when Palm Harbor made the representation it had no intent to perform as promised and made the representation with an intent to deceive.
Although Palm Harbor also argues that there was no justifiable reliance on any misrepresentation made during the Crawfords' factory tour, because the purchase agreement Mr. Crawford signed in October 1992 contained a statement that All Star would perform setup of the mobile home, we believe the fraud was already complete when Mr. Crawford made his $4,100 down payment in August 1992 and first suffered monetary damage as a proximate result. Thus, the promissory fraud count was a "good" count.

B. Defects in the Mobile Home

Mr. Crawford alleged that by expressly warranting that his mobile home was free from defects in materials and workmanship *10 and that it had been constructed in compliance with federal guidelines, Palm Harbor fraudulently suppressed the fact that the home actually had numerous defects, which, he alleged, Palm Harbor was aware of when it sold him the mobile home. He also alleged that Palm Harbor suppressed that fact with the intent to induce him to purchase his Palm Harbor mobile home, and that he suffered damage as a proximate result.
Palm Harbor argues that under Alabama law a fraud claim will not lie for a breach of a warranty, and that Mr. Crawford's fraudulent suppression claim should not have been submitted to the jury. Citing Rhodes v. General Motors Corp., 621 So.2d 945 (Ala. 1993), Palm Harbor argues that an allegation of a breach of an express warranty to repair will support only a breach of contract claim and not a tort claim. Moreover, Palm Harbor argues that Mr. Crawford could not have relied to his detriment on any statement or representation contained in its warranty because, it says, Mr. Crawford did not read the warranty until well after he had purchased the mobile home.
In response, Mr. Crawford argues that he presented substantial evidence in support of a claim of fraudulent suppression. He refers this Court to certain language contained in the written warranty that the United States Department of Housing and Urban Development ("HUD") requires to be given with the sale of a new manufactured home. That document, which is a standard HUD form, states, in relevant part:
"To induce the Secretary of Housing and Urban Development to insure a loan under Title I of the National Manufactured Housing Act for the purchase of the new manufactured home identified above, and to induce the borrowers to purchase said manufactured home, the manufacturer of said home does hereby warrant to the borrowers, and to their heirs and assigns, that:

"1. The manufactured home identified above has been constructed in compliance with the manufactured home standards prescribed by the Secretary in accordance with the National Manufactured Housing Construction and Safety Standards Act of 1974, 42 U.S.C. 5401 et seq., as evidenced by a label or tag affixed to the manufactured home, and is free from defects in materials and workmanship.

"2. The manufacturer will take appropriate action to correct any nonconformity with the Federal manufactured home standards or any defects in materials or workmanship that become evident within one year after the date of delivery of the manufactured home...."
(Emphasis added.) Mr. Crawford contends that by signing this HUD form, Palm Harbor represented that the mobile home he was purchasing was free of defects and suppressed from him the fact that the home actually contained many defects.
In its order denying Palm Harbor's post-judgment motions, the trial court stated the following regarding this claim:
"This court finds that Palm Harbor had a duty to the Plaintiffs, created by statute, not to suppress material facts from Plaintiffs relating to defects in or damages to the mobile home which were known to Palm Harbor. There was undisputed evidence that after the mobile home was constructed, but before it was delivered to the Plaintiffs, Palm Harbor issued a warranty, pursuant to requirements of the United States Department of Housing and Urban Development....
". . . .
"There was substantial evidence from which the jury could determine, by a clear and convincing standard, that Palm Harbor knew the mobile home was not constructed according to the required standards, and was defective when it made representations in the warranty to the contrary."
Although we find no error with the trial court's reasoning regarding the application of the facts of this case to the elements of a fraudulent suppression claim, we note that Palm Harbor is correct in arguing that under Alabama law the breach of an express warranty will not support a fraud claim. This Court has previously held that the language of an express warranty to repair cannot be *11 construed as a representation that a product is entirely free of defects. Hughes v. Hertz Corp., 670 So.2d 882 (Ala.1995); Rhodes v. General Motors Corp., 621 So.2d 945 (Ala. 1993); Tittle v. Steel City Oldsmobile GMC Truck, Inc., 544 So.2d 883 (Ala.1989). Rather than guaranteeing that the product is free of defects, an express warranty to repair anticipates that any defects detected during the term of the warranty will be remedied. Hughes, supra; Rhodes, supra; Tittle, supra. Likewise, the Crawfords each admitted during trial that, following the Palm Harbor factory tour, they were made to understand that Palm Harbor's warranty meant that Palm Harbor would come out and fix any problems with their mobile home that occurred during the first year.
Because the language of an express warranty to repair will not support a fraud claim based on a representation that the product is free of defects, the trial court erred in denying Palm Harbor's directed verdict motion on Mr. Crawford's fraudulent suppression claim and submitting it to the jury. Thus, this fraudulent suppression claim was a "bad" count, and the judgment based on the jury's general verdict in favor of Mr. Crawford must be reversed and the cause remanded for a new trial on any "good" counts.

C. Damage to the Mobile Home

Mr. Crawford alleged that Palm Harbor fraudulently suppressed the fact that the Palm Harbor mobile home he purchased had been damaged while on the All Star lot and the fact that a Palm Harbor representative had performed an inferior-quality repair of the damage. He further alleged that as a result of Palm Harbor's failure to inform him of the damage and inferior repair before he purchased the mobile home, he was proximately caused to suffer damage.
Palm Harbor argues that it had no legal duty to disclose to Mr. Crawford the fact that the mobile home had been damaged and then repaired. Palm Harbor states that the damage occurred after title to the mobile home had passed from Palm Harbor to All Star, and that it had repaired the damage only because All Star had requested it to do so. Palm Harbor contends that All Star, not it, had the duty to disclose the damage and the repair. Palm Harbor argues that its retailer All Star had an independent duty to inform Mr. Crawford of the damage and the repair, and citing McGhee v. Oryx Energy Co., 657 So.2d 853 (Ala.1995), it argues that because of that duty Palm Harbor had the right to rely on All Star to perform that duty.
In response, Mr. Crawford argues, first, that the same federal manufactured housing standards that required Palm Harbor to give a written warranty imposed on Palm Harbor the duty to disclose the damage and the repair. Mr. Crawford argues alternatively that the nature of the relationship between him and Palm Harbor imposed on Palm Harbor a duty to disclose that the mobile home had been damaged and repaired. He relies on Hines v. Riverside Chevrolet-Olds, Inc., 655 So.2d 909 (Ala.1994), which held that even in the absence of a contractual relationship the existence of a duty to disclose can be a question of fact for the jury. Thus, Mr. Crawford contends, because Palm Harbor custom-built the home according to specifications and requirements supplied by him and his wife, and because Palm Harbor had learned of the damage to the mobile home and had repaired that damage, it had a duty to inform him of the damage before he purchased the home.
In its order denying Palm Harbor's post-judgment motions, the trial court stated:
"There was evidence from which the jury could find, by a clear and convincing standard, that Palm Harbor committed fraud against the Plaintiffs by suppressing from them damage which was done to the mobile home when it was backed into while on the dealer's lot prior to it being delivered to the Plaintiffs. The court rejects the Defendant's argument that it owed no duty to the Plaintiffs to inform them of the damage. There was undisputed evidence that the mobile home was custom-built by Palm Harbor for the Plaintiffs.... Palm Harbor knew the mobile home was being built for the Crawfords. The Crawfords' name and address appeared on Palm Harbor documents, such as the invoice. During construction of the home, employees at Palm Harbor talked directly with the Crawfords....

*12 "... Within 24 hours of this damage being done, and prior to the closing with the Plaintiffs, Palm Harbor sent its repairman to repair the damage. There was substantial evidence from which a jury could find the repair work done by the Palm Harbor repairman was shoddy and unacceptable. The repaired area was covered over by vinyl siding material and was not noticeable without removing the vinyl siding which covered over the repaired area. It was undisputed that the Plaintiffs were never told of the damage or the repairs. Mr. Crawford testified that had he known of the damage and shoddy repairs he would not have accepted the mobile home."
In order to establish a prima facie case of fraudulent suppression of a material fact under Ala.Code 1975, § 6-5-102, a plaintiff must show: (1) that the defendant had a duty to disclose a material fact; (2) that the defendant concealed or failed to disclose the material fact; (3) that the defendant's concealment or failure to disclose the material fact induced the plaintiff to act or to refrain from acting; and (4) that the plaintiff suffered actual damage as a proximate result. Hines, supra; Soniat v. Johnson-Rast & Hays, 626 So.2d 1256 (Ala.1993). Viewing the evidence in a light most favorable to Mr. Crawford, the nonmovant in regard to the motions for a directed verdict and a J.N.O.V., we conclude that he presented substantial evidence of all the elements of his claim.
McGhee v. Oryx Energy Co., 657 So.2d 853 (Ala.1995), cited by Palm Harbor, is not controlling. In McGhee, we held that a propane gas manufacturer had no duty to warn the ultimate users of its product about the propane's dangerous properties because the manufacturer had no way of ascertaining the identity of the users and, thus, no way of submitting product information to them except through its retail distributor. 657 So.2d at 855. However, in this case, Palm Harbor knew that the Crawfords were the ultimate users of the damaged Palm Harbor home, and Palm Harbor had the means and the information necessary to inform them that the home had been damaged.
Thus, we believe that, even without contractual privity, the nature of the relationship between Palm Harbor and Mr. Crawford, the value of the fact allegedly suppressed, and the particular circumstances of this case, see Hines, supra, created at least a question of fact as to the existence of a duty on the part of Palm Harbor to disclose material facts to Mr. Crawford. Mr. Crawford presented substantial evidence indicating that Palm Harbor had superior knowledge of a material fact regarding the mobile home it had just custom-built for Mr. Crawford; the custom building was a process in which Palm Harbor and the Crawfords had worked together. He proved that Palm Harbor had repaired the damage; that it had done shoddy repairs; and that the repairs were completed in such a manner that the poor workmanship was concealed from view. Mr. Crawford also presented substantial evidence that Palm Harbor's failure to disclose that the home had been damaged and subsequently repaired induced him to purchase the home, and that he was caused to suffer damage as a proximate result. Accordingly, this fraudulent suppression claim was also a "good" count.

V.
Because we must reverse the judgment entered on the jury's general verdict in favor of Mr. Crawford, we need not now address the issues raised by Palm Harbor regarding the jury's award of punitive damages and the trial court's denial of its other post-judgment motions. The trial court's order denying Palm Harbor's motion to compel arbitration is affirmed. However, the judgment, being based on the jury's general verdict, must be reversed. The judgment is reversed and the cause is remanded for further proceedings consistent with this opinion.
ORDER DENYING ARBITRATION AFFIRMED; JUDGMENT REVERSED; AND CAUSE REMANDED.
SHORES, HOUSTON, and KENNEDY, JJ., concur.
*13 ALMON and COOK, JJ., concur in the result.
HOOPER, C.J., and MADDOX, J., concur in part and dissent in part.
MADDOX, Justice, concurring in part and dissenting in part.
I concur in the holding that Palm Harbor Homes waived its right to compel arbitration, and I concur in the holding that the second fraud claim ("Defects in the Mobile Home") was a "bad count"; however, I must respectfully dissent from the holdings that the other two fraud counts were "good counts."
On the arbitration issue, it appears to me that this Court's holding in Companion Life Ins. Co. v. Whitesell Mfg., Inc., 670 So.2d 897 (Ala.1995), is consistent with holdings by federal courts on this issue of waiver. See, Leadertex, Inc. v. Morganton Dyeing & Finishing Corp., 67 F.3d 20, 25 (2d Cir.1995); Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 39 F.3d 1482 (10th Cir.1994); Cotton v. Slone 4 F.3d 176 (2d Cir.1993); Morrie Mages & Shirlee Mages Foundation v. Thrifty Corp., 916 F.2d 402 (7th Cir.1990).
In Envirex, Inc. v. K.H. Schussler Fur Umwelttechnik GmbH, WDS-Engineering & Consulting Corp., 832 F.Supp. 1293 (E.D.Wis.1993), the Wisconsin district court opined:
"Under Section 3 of Title 9 of the United States Code, this court must stay the proceedings of an action pending arbitration upon application of one of the parties if the issue involved in the proceeding is referable to arbitration under an agreement in writing, provided that the applicant for the stay has not defaulted in proceeding with such arbitration. Therefore, the threshold question is whether or not the defendants have defaulted by waiving any rights they may have to arbitration. The federal courts have developed a strong presumption in favor of arbitration and do not lightly infer waiver. Midwest Window Systems, Inc. v. Amcor Indus., Inc., 630 F.2d 535, 536 (7th Cir.1980). Thus, the party objecting to a stay pending arbitration bears a heavy burden of showing that the applicant for stay has waived its right to arbitration by acting in a manner inconsistent with the arbitration right. Morrie Mages & Shirlee Mages Found. v. Thrifty Corp., 916 F.2d 402, 405 (7th Cir.1990)."
(Emphasis added.)
In Leadertex, supra, the Second Circuit Court of Appeals stated that the factors to be considered in deciding whether there had been a waiver of any rights to arbitration include: "[1] the amount of litigation (usually exchanges of pleadings and discovery), [2] the time elapsed from the commencement of litigation to the request for arbitration, and [3] the proof of prejudice." 67 F.3d at 25. A delay in seeking arbitration does not necessarily create a waiver, the question being whether the delay prejudices the opposing party. 67 F.3d at 25. Furthermore, these factors must be carefully considered in the context of the United States Supreme Court's strong policy favoring arbitration: "The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone Memorial Hospital v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). See also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626, 105 S.Ct. 3346, 3353-54, 87 L.Ed.2d 444 (1985); Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995); and Cotton v. Slone, 4 F.3d 176, 179 (2d Cir.1993).
Palm Harbor waited two years after the filing of the initial complaint and nearly eight months after All Star, Cannon, and Adams moved for arbitration to file its own motion for arbitration. Furthermore, it waited until after the trial to appeal the trial court's denial of arbitration. Applying the principles set out above, I find a waiver here; nevertheless, Palm Harbor, in my opinion, had a right to seek immediate review of the trial court's order, because "§ 16 authorizes immediate appellate review of an order `refusing a stay' of litigation pending arbitration or an order denying a motion to compel arbitration. 9 U.S.C. § 16(a)(1)(A), (B), & (C) (Supp. V *14 1994). It matters not whether these orders are final or interlocutory because orders that favor litigation over arbitration are `immediately appealable, even if interlocutory in nature.' "American Cas. Co. of Reading, Pennsylvania v. L-J, Inc., 35 F.3d 133, 135 (4th Cir.1994), quoting Stedor Enterprises, Ltd. v. Armtex, Inc., 947 F.2d 727, 730 (4th Cir.1991) (emphasis added in American Cas.); 9 U.S.C. § 16. See also, Matter of Arbitration Between Chung and President Enterprises Corp., 943 F.2d 225 (2d Cir. 1991).[7]

The Fraud Claims
I disagree with the majority's holding that the trial court properly denied a directed verdict on the first and third fraud claims. Mr. Crawford, in my opinion, failed to present substantial evidence that Palm Harbor made a false representation concerning the setup the mobile home, but even if it did, Mr. Crawford certainly did not rely upon it to his detriment. See Taylor v. Moorman Mfg. Co., 475 So.2d 1187 (Ala.1985); Webb v. Renfrow, 453 So.2d 724 (Ala.1984); and Davis Bluff Land & Timber Co. v. Cooper, 223 Ala. 137, 134 So. 639 (1931).
As to the third fraud claim I do not believe the evidence supports a finding that Palm Harbor fraudulently suppressed facts relating to the damage to the mobile home caused by a third party. When the damage occurred, title to the mobile home had been transferred to All Star Homes and the mobile home was located on All Star's property. It does not seem to be disputed that Palm Harbor repaired the mobile home at the request of All Star; consequently, I fail to see how Palm Harbor's undertaking to repair the mobile home established a duty on its part to disclose any facts to the Mr. Crawford. See, Interstate Truck Leasing, Inc. v. Bender, 608 So.2d 716 (Ala.1992).
Consequently, I must respectfully disagree with the Court's holding that Mr. Crawford presented substantial evidence to support the first and third fraud claims.
HOOPER, C.J., concurs.
NOTES
[1] A breach of warranty action extends beyond the purchaser to any natural person if it is reasonable to expect that the person may use, consume, or be affected by the product and the person suffers personal injury because of the breach of warranty. Bishop v. Faroy Sales, 336 So.2d 1340 (Ala.1976).
[2] Mrs. Crawford had suffered a finger laceration when she contacted an exposed nail in the kitchen pantry. The cut required hospital treatment, and Mrs. Crawford testified at trial that she continues to be bothered by the injury.
[3] Hammond v. City of Gadsden, 493 So.2d 1374 (Ala.1986).
[4] The language of the arbitration agreement at issue in this case is the same as that in the arbitration agreement at issue in Ex parte Gates.
[5] The evidence as to the statement allegedly made by the Palm Harbor employee to the Crawfords during their factory tour was in conflict. Further, a Palm Harbor representative admitted at trial that the language of the brochure could mislead the general public as to what services Palm Harbor provided to the purchasers of its mobile homes.
[6] Mr. Crawford testified that it was important to him that the mobile home he would purchase be set up correctly.
[7] Likewise, this Court has consistently held that an appeal is the proper procedure for challenging a denial of a motion to compel arbitration. A.G. Edwards & Sons, Inc. v. Clark, 558 So.2d 358, 360 (Ala.1990); Companion Life Ins. Co. v. Whitesell Mfg., Inc., 670 So.2d 897 (Ala.1995); Long v. Industrial Dev. Bd. of the Town of Vincent, 619 So.2d 1387 (Ala.1993).