STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

21-241


JAMESTOWN FORESTLAND, LLC

VERSUS

ROBBIE LEE SETLIFF, ET AL



**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 257,524
HONORABLE DON BURNS, DISTRICT JUDGE PRO TEM PRESIDING

**********

CANDYCE G. PERRET
JUDGE

**********

Court composed of Elizabeth A. Pickett, John E. Conery, and Candyce G. Perret,
Judges.


AFFIRMED.

**Michael H. Davis**
**2017 MacArthur Drive, Building 4, #A**
**Alexandria,   LA 71301**
**(318) 445-3621**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
    **Lee Ray Setliff**
    **Robbie Lee Setliff**
    **Susan Stark**

**Randall B. Keiser**
**Matthew L. Nowlin**
**Keiser Law Firm, P.L.C.**
**Post Office Box 12358**
**Alexandria,   LA 71315**
**(318) 443-6168**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
    **Jamestown Forestland, L.L.C.**
    **BLPC, L.L.C.**
    **VBP, L.L.C.**

**PERRET, Judge.**

Lee Ray Setliff ("Lee Ray"), Robbie Setliff ("Robbie"), and Susan Setliff Stark ("Susan"), (collectively, "Appellants") appeal the judgment of the trial court granting a Motion for Summary Judgment filed by Jamestown Forestland, L.L.C., ("Jamestown") BLPC, L.L.C. ("BLPC"), and VBT, L.L.C. ("VBT") (collectively, "Appellees"). For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

This case has been before this court on two prior occasions—first, in the appeal of *Jamestown Forestland, L.L.C. v. Setliff*, 17-637, (La.App. 3 Cir. 12/28/17), 235 So.3d 1183, wherein this court vacated the trial court's granting of Jamestown's exception of res judicata and remanded the case to the trial court in order for the owner of the subject property to be joined as a necessary party to the litigation; and second, in writ application number 19-473, wherein this court found no error in the trial court's denial of Appellees' exception of res judicata. The instant appeal is from the trial court's granting of Appellees' Motion for Summary Judgment and dismissal of Appellants' reconventional demand that claimed that they have ownership or possessory rights to a 3.23-acre tract of property through thirty-year acquisitive prescription. The following facts and procedural history are relevant to the appeal currently before this court.

This case involves an eviction proceeding and a dispute over ownership and possessory rights to property. Jamestown is the leasehold tenant of 3.23 acres of immovable property located in Rapides Parish, and Appellants have been occupying the property. On December 7, 2016, Jamestown filed suit seeking to have Appellants evicted from the property. Jamestown alleged that Appellants have no ownership or possessory interest in the property and that they refused to vacate the premises after receiving written notice to vacate.

In response, on January 31, 2017, Appellants filed a reconventional demand against Jamestown alleging that they have ownership or possessory rights to the 3.23-acre property at issue because they have had uninterrupted possession of the property for more than thirty years.  In their reconventional demand, Appellants also claim ownership and/or possessory rights to an adjoining thirty acres of land, and they seek damages for mental pain and suffering.   Specifically, Appellants allege that they possess as owner the following described immovable property:

A.    Commencing at a 5"x 5" concrete monument marking the northwest corner of Section 29, Township 5 North, Range 5 West; thence proceed South 00 degrees 10 minutes 07 seconds West, a distance of 1666.69 feet to a ½" iron rod; thence turn left and proceed South 89 degrees 50 minutes 44 seconds East, a distance of 1024.54 feet to a ½" iron rod; thence turn right and proceed South 58 degrees 11 minutes 30 seconds East, a distance of 136.86 feet to a ½ iron rod marking the POINT OF BEGINNING of the tract to be described; thence turn left and proceed North 33 degrees 24 minutes 54 seconds East, a distance of 296.78 feet to a ½" iron rod; thence turn right and proceed South 78 degrees 43 minutes 50 seconds East, a distance of 155.92 feet to a ½" iron rod; thence turn right and proceed South 54 degrees 09 minutes 59 seconds East, a distance of 74.24 feet to a nail located in the centerline of Setliff Road; thence turn right and proceed South 18 degrees 56 minutes 37 seconds West, along said centerline, a distance of 334.01 feet to a nail; thence turn right and proceed South 21 degrees 53 minutes 54 seconds West, along said centerline, a distance of 69.86 feet to a nail; thence turn right and proceed South 78 degrees 58 minutes 58 seconds West, a distance of 262.04 feet to a ½" iron rod; thence turn right and proceed North 52 degrees 33 minutes 54 seconds West, a distance of 117.89 feet to a ½" iron rod; thence turn and right and proceed North 30 degrees 24 minutes 12 seconds East, a distance of 214.92 feet to the POINT OF BEGINNING.

The above described tract contains 3.23 acres and is more particularly indicated on Certificate of Survey by W. Aaron Wood, dated September 29, 2015.

B.    Adjoining thirty (30) acres also in Section 29, Township 5 North, Range 5 West, Louisiana, Meridian, Northwest Land District, Rapides Parish, Louisiana.

2

On February 10, 2017, Jamestown responded to Appellants' reconventional demand by filing various exceptions, including the exceptions of res judicata and nonjoinder of a party. Jamestown's exception of res judicata was based on the fact that a petitory action had been filed back in 1975 by Wm. T. Burton Industries, Inc. ("Burton Industries"), against Appellants' ancestor, Leo George (Mr. George), who had claimed to have acquired ownership of the property at issue herein via thirty-years acquisitive prescription. In a judgment signed on January 20, 1977, in the matter entitled, "*Wm. T. Burton Industries Inc., v. Leo George*," Burton Industries was declared to be the legal owner of the Southeast and Southwest Quarters of the Northwest Quarter of Section 29, Township 5 North, Range 5 West, and Mr. George was ordered to vacate the property.[1] Jamestown argued in the exception of res judicata that the parties are "successors in litigation" to the parties from the 1977 litigation because Appellants are Mr. George's son-in-law and grandchildren and because Jamestown leases the property at issue from Burton Industries' successors. Jamestown alleged that Appellants' reconventional demand raises the same cause of action that had previously been raised by Mr. George in the 1977 case and, thus, Appellants' reconventional demand is barred by res judicata. Alternatively, Jamestown argued that the reconventional demand should have been dismissed because the owner of the property, Burton Industries, had not been joined as a party in the litigation.

On April 24, 2017, the trial court signed a judgment that granted Jamestown's exception of res judicata. On December 28, 2017, this court vacated the trial court's ruling upon finding that the trial court erred in granting the exception of res judicata on issues involving the ownership of immovable property when the reconventional

---

[1] At the trial in 1976, Burton Industries successfully established chain of title for the entirety of the Southeast and Southwest Quarters of the Northwest Corner to Section 29, Township 5 North, Range 5 West.

demand did not name the property owner, Burton Industries. This court remanded the case to the trial court in order for the property owner to be joined as a party to the suit.

Upon remanding, Appellants added BLPC and VBT, the successor companies to Burton Industries, as party defendants to the reconventional demand that had initially been filed on January 31, 2017. On November 20, 2018, BLPC and VBT joined with Jamestown to file a second exception of res judicata in response to Appellants' reconventional demand.

On January 28, 2019, a hearing was held on Appellees' second exception of res judicata. Once again, Appellees argued that Appellants' reconventional demand raises the same cause of action that had previously been raised by Mr. George in the 1977 case and is barred by res judicata. Additionally, Appellees argued, for the first time, that Betty George Setliff (the daughter of Mr. George, the wife of Lee Ray, and the mother of Robbie and Susan) signed a five-year lease agreement on May 22, 1991, with Boise Southern Company ("Boise Southern"), a company that was the holder of surface leasehold rights prior to Jamestown's leasehold rights. Appellees argued that the 1991 lease agreement acknowledged that William B. Lawton Company, Inc. and Jack Lawton, Inc. were the successors of Burton Industries and co-owned the immovable property at issue at the time of the 1991 lease. Appellees alleged that the lease commenced on June 1, 1991, and terminated on May 31, 1996, and gave Betty George Setliff ("Betty") and her husband, Lee Ray, the right to maintain a house site and garden on the subject property that was then-owned by William B. Lawton Company, Inc. and Jack Lawton, Inc. and leased to Boise Southern. By signing the lease, Appellees argue that Betty acknowledged, that her "previous use, possession and occupancy of any or all of the property described hereinabove, or any of the property covered and described in the Lawton-Boise

4

Agreements, was and is precarious at the will and sufferance of the owners, William B. Lawton Company, Inc. and Jack Lawton, Inc."

As such, Appellees allege that the 1991 lease eliminates the possibility of Appellants' ownership in the property through thirty-year acquisitive prescription. On May 28, 2019, the trial court signed a judgment denying Appellees' exception of res judicata, and on August 20, 2019, this court denied writs on this issue.

On October 1, 2020, Appellees filed a Motion for Summary Judgment alleging that there are no genuine issues of material fact and that Appellants' reconventional demand should be dismissed with prejudice. In its motion, Appellees contend that Appellants' acquisitive prescription claim to the disputed property fails for two reasons: (1) a 1977 judgment was issued declaring the predecessor-in-interest of BLPC and VBT, Burton Industries, the rightful owner of the subject property; and (2) Betty (Lee Ray's wife and Robbie and Susan's mother) signed a lease in 1991 with a five-year term acknowledging that the successors of Burton Industries, William B. Lawton Company and Jack Lawton, Inc., owned the property – not them. Appellees contend that the 1991 lease between Betty and Boise Southern interrupted Appellants' thirty-year acquisitive prescription claim for ownership of the disputed property. Additionally, Appellees contend that a lessee, being a precarious possessor, may not acquire his lessor's property by acquisitive prescription.

In support of its motion for summary judgment, Appellees attached the following exhibits: (1) the Petition for Eviction filed on December 7, 2016; (2) Appellants' Answer and Reconventional Demand filed on January 31, 2017; (3) Appellees' Answer to Reconventional Demand, with exhibits;[2] (4) Appellees'

---

[2] The following exhibits were attached to Appellees' Answer to Reconventional Demand: (1) the Rule to Evict Tenant filed on September 25, 1974; (2) the Reasons for Judgment signed on

5

Requests for Admission to Appellants, with exhibits;[3] and (5) Appellants' Response to Requests for Admission.

Appellants responded to the motion by arguing that there are three material issues of fact that warrant a trial: (1) whether Appellants adversely possessed with intent to exercise ownership of the property; (2) whether the lease signed by Betty had any effect on Appellants, especially considering the fact that they did not sign the lease and that the lease was limited to only two acres of the disputed property; and (3) whether Appellants are attempting to use any of the years of possession from the Leo George law suit, i.e. the years prior to 1977. In support of their opposition, Appellants attached the affidavits of Lee Ray and Susan, two Cleco printouts, a plat survey by Matthew Phillips, consisting of 7.1 acres of the disputed property, and a plat survey by W. Aaron Wood, consisting of 3.23 acres of the disputed property. The affidavit of Lee Ray provided, in pertinent part:

> 1) That Affiant, Lee Ray Setliff, 74 years of age, is a Defendant and Plaintiff in Reconvention in the above entitled and captioned matter.
>
> 2) That Affiant, Lee Ray Setliff has lived on and possessed the property which is more particularly shown on plat of surveys attached to this Affidavit, one survey by Matthew Phillips, Surveyor, consisting of 7.1 acres and a survey by W. Aaron Wood, Surveyor, consisting of 3.23 acres.
>
> 3) That Affiant, Lee Ray Setliff, moved onto the property with his family in 1970 and continuously since that date has possessed the property as his own property and has exercised dominion over the property as his own property. He and his family resided in a log house on the property, maintained a garden on the property, maintained fences on the perimeters of the property and maintained a fenced pasture for his daughter's horse.

_____

December 22, 1976; (3) the Judgment of January 20, 1977; (4) the Judgment of July 13, 1977; and (5) the Lease between Boise Southern and Betty, signed on May 22, 1991.

[3] The following exhibits were attached to Appellees' Requests for Admission to Plaintiffs-in-Reconvention: (1) the Judgment of January 20, 1977; (2) the Judgment of July 13, 1977; and (3) the Lease signed by Betty on May 22, 1991.

6

4) Affiant further maintained utilities and paid for utility service to the premises as is shown by the records of Central Louisiana Electric Company, attached hereto. He also operated a pulp wood business from the property, cutting pulp wood from trees on the property and hauling the pulp wood to market. He was assisted in this endeavor by his son, Robbie Setliff.

5) At the time Affiant moved and began residing on the subject property, his daughter Susan Setliff Stark was four (4) years of age and his son Robbie Setliff was six (6) years of age. In approximately in 1981, Susan Setliff Stark married and she and her new husband moved a trailer on the subject property and lived in that trailer for eight (8) years. His daughter Susan remarried when she was twenty (20) years old in approximately 1989 and she and her new husband resided on the property and lived there for approximately seven (7) years. After she moved from the property, she still maintained her horse on the property and would return to the property to feed and care for the horse and maintain the fences.

6) Affiant shows that the only time that he has been away from the property was when he was in prison for five years from approximately the year 2000 until 2005. His son, Robbie Setliff, moved back into the family home and took care of the premises while Affiant was in prison.

7) Affiant returned to the property after being in prison and has remained on the property until this date.

8) Affiant is cognizant of a lease that was signed by Betty Setliff, his wife, in 1991.

9) Affiant refused to be party to the lease and did not concur in his wife signing the lease. Betty Setliff had no authority to sign a lease on behalf of Affiant.

10) Affiant further shows that the lease in question covered only two (2) acres and that his possession has greatly exceeded an area of two (2) acres, as shown on the recorded plats attached hereto.

11) Affiant has also posted the property with signs of "No Trespassing." There was a sawmill on the property which had been operated by Ronald George and was used by the Affiant.

12) A water well was also built on the property and a home was built on the property. The home has since burned.

13) Affiant also had blue line markings made on the property indicating the boundaries of the property.

The affidavit of Susan stated, in pertinent part:

1) That Affiant, Susan Setliff Stark, is a Defendant and Plaintiff in Reconvention in the above entitled and captioned matter.

2) That Affiant, Susan Setliff Stark, lived on the property as shown on the plats of survey attached hereto from 1970 when she moved on the property with her father, mother and brothers and she lived on the property with her parents until 1981. At that time, she and her new husband acquired a mobile home and moved it on the subject property through the year 1988. While living on the property, she maintained the mobile home which she lived, planted a garden, and enclosed a pasture for her horse.

3) In 1988, Susan Setliff Stark moved from the subject premises to a home in Colfax with her husband. However, she frequently returned to the subject property to care for her horse who remained in the pasture on the property, to maintain the fences and post "No Trespassing" signs on the property.

4) Affiant's father, Lee Ray Setliff, continuously lived on the property from 1970 until this date. He planted gardens, maintained fences, cut trees, operated a pulp wood business on the property, and used a sawmill that was located on the property for the pulp wood business.

5) Affiant further deposes that the only time Lee Ray Setliff was not on the property was a period of time when he was in prison from approximately 2000 to 2005. However, during that time, the son of Lee Ray Setliff and the brother of Susan Setliff Stark, moved on to the property and took care of the property in the absence of Lee Ray Setliff. He continued to operate the pulp wood business on the property, maintained the fences on the property, raised gardens on the property, and maintained the utility connection on the property.

6) Affiant is cognized of a lease signed by her mother in 1991 covering two (2) acres of property. Affiant shows that this lease was an action that was not authorized by Susan Setliff Stark and that her mother had no authority to act on her behalf.

7) Affiant knows of her own personal knowledge that since the year 1970, her father has maintained the residence on the subject property, performed acts of possession and ownership over the property, and maintained dominion over the property.

8) Affiant knows of her own personal knowledge that her father maintained a garden on the property as did Affiant when she lived on the property, maintained the fences, kept a horse on the property in a pasture that was fenced, and operated a pulp wood business off of the property which included cutting timber on the property and transporting pulp wood to market.

9) Affiant also has personal knowledge that her brother, Robbie Lee Setliff, lived on the property from age six (6) until age eighteen (18)

8

when he married and established a residence elsewhere. He returned to the property to help his father in the pulp wood business and to maintain the property fences, gardens, living places and out buildings. After moving back on the property in the year 2000, Robbie Lee Setliff remained on the property to this date and continues to live and help his Daddy maintain the property and perform acts of dominion over the property as mentioned herein.

After a hearing on November 30, 2020, the trial court granted Appellees' Motion for Summary Judgment, dismissing Appellants' case with prejudice. After reviewing the Appellants' affidavits, plats, and the 1991 lease agreement, the trial judge provided the following oral reasons for granting the summary judgment, emphasis added:

> It seems to me that that [Lee Ray and Betty Setliff's] possession was, in fact, interrupted by the 1991 Lease. Then that continued through 1995. Um, I think that lease in its entirety, looking at it, is more than an, uh, a disturbance. It is an affirmative acknowledgment by, um, Ms. [Betty Setliff] that she did not own the property . . . **I was specifically interested [in] . . . their possession claims [of] ownership of two tracts, a 3.23 acre and a 7.18, uh, tract. They're both within the northwest quarter of 2955 and she has acknowledged in that lease that she doesn't own the property.** I think she binds her, uh, community. She . . . certainly binds herself and, in doing so, I think . . . [the] prescriptive claim would then have to begin anew, um, as I appreciate it January 1 of '96.
>
> I do think 3464 of Civil Code is applicable. I do think that interrupted the prescription. . . . I find that the possession has not been exclusively . . . to themselves to the exclusion of all others. It . . . specifically acknowledges that, uh, there's another owner. I just don't see how that can, you can overcome that in a prescriptive claim. I do think, um, that that's not a material issue of fact. I think that's a fairly clear, uh, as far as this Court sees it, issue and I'm going to grant the Motion for Summary Judgment.

Appellants now appeal this judgment, alleging the following sole assignment of error:

> The Honorable Trial Judge erred in granting the motion for summary judgment finding that the occupancy agreement signed by the wife of Lee Ray Setliff, bound Lee Ray Setliff to the agreement, and interrupted his prescriptive period.

## STANDARD OF REVIEW

An appellate court reviews a trial court's granting of a motion for summary judgment de novo. *Duncan v. U.S.A.A. Ins. Co.*, 06-363 (La. 11/29/06), 950 So.2d 544. Under this standard of review, the appellate court uses the same criteria as the trial court in determining if summary judgment is appropriate: whether there is a genuine issue of material fact and whether the mover is entitled to judgment as a matter of law. *Id.* "A fact is 'material' when its existence or nonexistence may be essential to [a] plaintiff's cause of action under the applicable theory of recovery." *Smith v. Our Lady of the Lake Hosp., Inc.,* 93-2512, p. 27 (La. 7/5/94), 639 So.2d 730, 751. "[F]acts are material if they potentially insure or preclude recovery, affect a litigant's ultimate success, or determine the outcome of the legal dispute." *Id.* (*quoting S. La. Bank v. Williams*, 591 So.2d 375, 377 (La.App. 3 Cir. 1991), *writs denied*, 596 So.2d 211 (La.1992)).

The mover bears the burden of proving that he is entitled to summary judgment. La.Code Civ.P. art. 966(D)(1). However, if the moving party will not bear the burden of proof on the issue at trial, he need only demonstrate an absence of factual support for one or more elements essential to the non-moving party's claim. *Id.* Then, the non-moving party must produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. *Id.* If the non-moving party is unable to do so, there is no genuine issue of material fact and summary judgment will be granted. La.Code Civ.P. art. 967(B).

## LEGAL PRINCIPLES

### Immovables:  Possession and Prescription:

Louisiana Civil Code Article 3486 provides that "[o]wnership and other real rights in immovables may be acquired by the prescription of thirty years without the need of just title or possession in good faith."  "For purposes of acquisitive

prescription with-out title, possession extends only to that which has been actually possessed." La.Civ.Code art. 3487. "In the absence of title, there is no constructive possession: one has possession only of the area he *actually* possesses. Actual possession must be either inch-by-inch possession . . . or possession within enclosures." La.Civ.Code art. 3426, comment (d). "The party who does not hold title to the disputed tract has the burden of proving actual possession within enclosures sufficient to establish the limits of possession with certainty, by either natural or artificial marks, giving notice to the world of the extent of possession exercised." *Brunson v. Hemler*, 43,347, p. 4 (La.App. 2 Cir. 8/13/08), 989 So.2d 246, 250, *writ denied*, 08-2297 (La. 12/12/08), 996 So.2d 1119.

Louisiana Civil Code Article 3476 states that "[t]he possessor must have corporeal possession, or civil possession preceded by corporeal possession, to acquire a thing by prescription" and that the "possession must be continuous, uninterrupted, peaceable, public and unequivocal." Louisiana Civil Code Article 3429 provides that "[p]ossession may be exercised by the possessor or by another who holds the thing for him and in his name. Thus, a lessor possesses through his lessee." Louisiana Civil Code Article 3438 provides that "[a] precarious possessor, such as a lessee or a depositary, is presumed to possess for another although he may intend to possess for himself." The 1982 Revision Comment (b) to article 3438 further states, "[a] precarious possessor is presumed to possess on behalf of another even if he changes his mind and intends to possess for himself."

**Interruption of Prescription:**

Louisiana Civil Code Article 3464 provides that "[p]rescription is interrupted when one acknowledges the right of the person against whom he had commenced to prescribe." The 1982 Revision Comment (b) to article 3464 states that, "[a]cquisitive prescription is interrupted when the possessor acknowledges the right

11

of the owner[.]" According to La.Civ.Code art. 3466 "If prescription is interrupted, the time that has run is not counted. Prescription commences to run anew from the last day of interruption."

**DISCUSSION**

The parties do not dispute that a final judgment was rendered on January 20, 1977, recognizing Burton Industries as the legal owner and possessor of the immovable property situated in the Southeast and Southwest Quarters of the Northwest Corner to Section 29, Township 5 North, Range 5 West. At that time, Mr. George and his family were ordered to vacate the property and deliver possession to Burton Industries. In this case, Appellants' March 30, 2017 opposition to the exception of res judicata makes it clear that their "possession . . . began subsequent to the Judgment of 1977, and [was] continuous without interruption until the instant suit was filed [on December 7, 2016] by the Plaintiff herein, Jamestown Forestland, L.L.C." As such, Appellants now have the burden of showing that they will be able to meet the necessary elements of thirty-year acquisitive prescription over the same property but beginning in 1977.

On appeal, Appellants allege that they have exercised dominion over the disputed property for over thirty years and that their possession was not interrupted by the 1991 lease because: (1) Betty did not have their express consent to enter into the lease with Boise Southern; and (2) the lease only applied to two of the eleven acres that they are claiming ownership of through acquisitive prescription.

In response, Appellees argue that the 1991 lease and its terms apply to Lee Ray, and derivatively to Susan and Robbie, because it is undisputed that Betty was married to Lee Ray from 1964 through 1995 and that the lease was signed during the community property regime. In support of this argument, Appellees cite to a case from this court, *Simon v. Charles*, 96-303 (La.App. 3 Cir. 2/19/97), 689 So.2d

12

716, which held that one spouse may lease immovable property from a third party and bind the other spouse under a community property regime. Further, Appellees argue that Appellants cannot obtain title through adverse possession when they have acknowledged another is the owner of the property.

After a review of the record, we agree with the trial court that the 1991 lease entered into by Lee Ray's wife, Betty, interrupted Appellants' thirty-year acquisitive prescription claim. Louisiana Civil Code Article 2340 provides that "[t]hings in the possession of a spouse during the existence of a regime of community of acquets and gains are presumed to be community, but either spouse may prove that they are separate property." Betty signed the 1991 lease while she was married to Lee Ray and during the community property regime. There is no declaration within the 1991 lease that the rights acquired were for her separate property. In *Simon,* 689 So.2d at 718 (emphasis in original), this court addressed the legal ramifications of having one spouse lease immovable property from a third party in a community property regime and stated, in pertinent part:

> First, nowhere does the civil code require the concurrence of both spouses to lease immovable property from a third party. Rather, under a community property regime, concurrence of the spouses is required only for the "alienation, encumbrance, or lease of *community immovables. . .*" La.Civ.Code art. 2347 (emphasis added). Secondly, the debt arising during the existence of the community property regime is presumed to be a community obligation which binds both parties to the marriage, despite the fact that the debt was incurred by only one of the spouses. La.Civ.Code art. 2361.

As a lessee, Betty, and her husband, Lee Ray, had the legal right of habitation to maintain their family home and raise their children, Robbie and Susan, on the property co-owned, at the time of the lease, by William B. Lawton Company, Inc. and Jack Lawton, Inc. Not only did the 1991 lease expressly acknowledge that the Setliffs did not own the subject property, but it stated that their prior possession of the property, possession of the property during the lease term, and any future use

13

and possession of the property was precarious and for the landowners. As previously stated, "[a]cquisitive prescription is interrupted when the possessor acknowledges the right of the owner[.]" La.Civ.Code art. 3464, comment (b). Accordingly, we find that Appellants' claim for acquisitive prescription was interrupted when Betty leased the disputed property in 1991 while acknowledging the rights of the landowners.

Although Appellants argue that the 1991 lease only applies to two acres of the disputed property, we find no merit to this argument. The lease describes the property as being located in the Section 29, Township 5 North, Range 5 West in Rapides Parish, Louisiana, and also provides references to the various property agreements entered into that were recorded over the years in the conveyance books of the parish of Rapides. Further, the 1991 lease provides:

> 7. Occupant [Betty] hereby acknowledges the title and ownership of [William B.] Lawton [Company, Inc. and Jack Lawton, Inc.] and the leasehold rights of Boise [Southern] to the above described property and to all of the property covered and described by the Lawton-Boise Agreements. Occupant further acknowledges that his previous use, possession and occupancy of any or all of the property described hereinabove, or any of the property covered and described in the Lawton-Boise Agreements, was and is precarious at the will and sufferance of the owners, William B. Lawton Company, Inc. and Jack Lawton, Inc., and their predecessors in title.

As the trial judge correctly found, both the 3.23-acre tract and the contiguous 7.18-acre tract of land that Appellants are claiming ownership of through acquisitive prescription are also located in Section 29, Township 5 North, Range 5 West, in Rapides Parish. The 1991 lease provided that Appellants' previous use of the property as well as any future use and possession of the property was precarious and held in possession "for the owners, William B. Lawton Company, Inc. and Jack Lawton, Inc." There was no evidence presented by Appellants of "inch-by-inch"

possession of any additional acres (outside of the 1991 lease) that establishes a material issue of fact to their claim of ownership through acquisitive prescription.

For these reasons, after a de novo review, we find that the trial court correctly granted summary judgment in favor of Appellees, Jamestown Forestlands, L.L.C., BLPC, L.L.C. and VBT, L.L.C., and dismissed Appellants' reconventional demand with prejudice. All costs of this appeal are assessed to the Appellants, Lee Ray Setliff, Robbie Setliff, and Susan Setliff Stark.

**AFFIRMED.**